IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

GINGER VEAL,

    Plaintiff,

vs.                                          CASE NO. 5:09-cv-356/RS/MD

NATIONWIDE LIFE INSURANCE
COMPANY,

    Defendant.
_____/

## ORDER

Before me are Defendant's Motion for Summary Judgment (Doc. 20); Plaintiff's Memorandum of Law in Opposition (Doc. 24); and Defendant's Reply Brief (Doc. 35).

### I.    BACKGROUND

Decedent Mark Veal, an employee of RSC Equipment Rental, Inc. (RSC), was a participant in RSC's Employee Welfare Benefit Plan ("the Plan"). Through the Plan, RSC offered a Basic Group Accidental Death and Dismemberment Insurance Policy and a Voluntary Group Accidental Death and Dismemberment Insurance Policy ("AD&D policies"), both of which were administered by Defendant. Both policies are governed by the Employee Retirement Income

Security Act (ERISA). Mr. Veal participated in both the Basic and Voluntary AD&D policies and Plaintiff, his spouse, was the named beneficiary on those policies.

On March 14, 2008, Mr. Veal fell while intoxicated, sustaining an injury to his head and requiring emergency medical attention. On March 28, 2008, Mr. Veal died as a result of the injuries he sustained on March 14, 2008. Following Mr. Veal's death, Plaintiff submitted to Defendant a claim for benefits under the AD&D policies.

Upon investigation, including a review of the sheriff's report of the investigation of Mr. Veal's injury, medical records, the Medical Examiner's Report, and the death certificate, Defendant's Plan administrator determined that Plaintiff's claim did not meet the requirements for coverage under the policies because Mr. Veal's fall was not a covered "accident" or "injury." (Doc. 21-13, p. 16). The administrator further determined that certain policy exclusions required the denial of Plaintiff's claim for benefits. *Id.* Defendant denied Plaintiff's claim on November 3, 2008.

Plaintiff has filed this lawsuit alleging that her claim for benefits was wrongfully denied and should be paid. Defendant asserts that it properly denied

benefits for the AD&D policies offered under the Plan and that no benefits are due or owed Plaintiff.

The AD&D policies contain exclusions that are at the center of this dispute. The policies contain exclusions for loss resulting from or contributed to by sickness or disease, and an alcohol exclusion. The exclusions in Section X of the policies state, in pertinent part:

> No benefit will be paid for any loss resulting in whole or part from, or contributed to by, or as a natural or probable consequence of any of the following even if the immediate cause of the loss is an accidental bodily injury:
> . . .
> 3. Sickness, disease, mental incapacity or bodily infirmity whether the loss results directly or indirectly from any of these.
> . . .
> 12. The Insured being deemed and presumed, under the law of the locale in which the Injury is sustained, to be under the influence of alcohol or intoxicating liquors.

(Doc. 21-13, pp. 4-5).

## II.  STANDARD OF REVIEW

A district court reviews an administrator's decision to deny benefits under an ERISA-governed plan for whether the decision of the administrator was arbitrary and capricious when the administrator "exercises discretion." *Doyle v. Liberty Life Assur. Co. of Boston*, 524 F.3d 1352, 1356 (11th Cir. 2008) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109, 109 S. Ct. 948. 953 (1989)). "When

conducting a review of an ERISA benefits denial under an arbitrary and capricious standard (sometimes used interchangeably with an abuse of discretion standard), the function of the court is to determine whether there was a reasonable basis for the decision, based upon the facts as known to the administrator at the time the decision was made." *Glazer v. Reliance Standard Life Ins. Co.*, 514 F.3d 1241, 1246 (11th Cir. 2008) (citing *Jett v. Blue Cross & Blue Shield of Ala.,* 890 F.2d 1137, 1139 (11th Cir.1989)). The court reviews "both the administrator's construction of the plan and concomitant factual findings." *See Paramore v. Delta Air Lines, Inc.,* 129 F.3d 1446, 1451 (11th Cir.1997).

### III. ANALYSIS

#### A. The Administrator's Decision Was Neither Arbitrary Nor Capricious

Upon review of the administrative record, it is impossible for the court to conclude that the plan administrator's denial of coverage was arbitrary or capricious based upon the facts known to the administrator at the time the decision was made. The administrative record is filled with numerous accounts of how Mr. Veal suffered the blunt force trauma to his head, and all of the accounts connect alcohol to the accident. Furthermore, all accounts of Mr. Veal's history, as relayed by Plaintiff, indicate that he had been drinking heavily at that time of his fall and

that he was intoxicated or "drunk" at that time. Consequently, the record supports the administrator's finding that Mr. Veal's fall while intoxicated did not constitute a covered "injury caused by the direct result of an accident . . . which results independently of all other causes in a covered loss." (Doc. 21-13, p. 16). The record also supports the administrator's finding that the health and alcohol exclusions applied. The record shows that Mr. Veal was an alcoholic and that alcohol contributed to his death.

The Eleventh Circuit has articulated the principle that when a policy states that an intoxication exclusion will apply merely because the insured was intoxicated at the time of death, the policy will be interpreted, in accordance with Florida law, to require a causal connection between the intoxication and the injury. *Hastie v. J.C. Penney Life Ins. Co.,* 115 F.3d 895, 897 (11th Cir.1997). Any other interpretation would, as the Eleventh Circuit noted, deliver unreasonable results in cases in which the insured was legally intoxicated (by sedation or otherwise) or was purely the victim of a third party's negligence. *Id.* Consequently, the policies at issue require a causal connection, consistent with Florida law.

Mr. Veal's autopsy and forensic toxicology lab reports show that his blood alcohol level was 0.10g/dL, and his medical report states "This is a 53 year old who was drinking heavily, fell and struck the back of his head." (Doc. 21-2, pp. 9,

15, 36). Even though the treating physician did not expressly state that alcohol caused the fall, a plain reading of the reports shows that alcohol was considered to be a factor contributing to the fall, thereby making Mr. Veal's intoxication a contributing cause. It is undisputed, therefore, that Plaintiff was intoxicated as defined by the Policy, as his blood alcohol content constituted *prima facie* evidence that he was "presumed, under the law of the locale . . . to be under the influence of alcohol or intoxicating liquors." *See* Fla. Stat. § 790.157(c) (blood alcohol content of 0.10 is *prima facie* evidence that a person is under the influence of alcohol for purposes of statute prohibiting use of firearm while under the influence of alcohol); Fla. Stat. § 316.1934(2)(c) (blood alcohol content of 0.08 is *prima facie* evidence that a person is under the influence of alcohol for the purposes of statute prohibiting operation of a motor vehicle while under the influence of alcohol).

While Plaintiff objects to Defendant's reliance upon the toxicology report and the Florida statutes defining criminal alcohol levels, I find that Defendant properly deferred to the independent, objective autopsy and toxicology reports. *See McClurg v. Hartford Life and Accident Ins. Co.*, No. 8:04-cv-2680, 2006 WL 2801878 (M.D. Fla. Sep. 28, 2006) (citing *Sawyer v. Potash Corp. of Saskatchewan,* 417 F. Supp. 2d 730, 741-742 (E.D. N.C. 2006) (finding a

toxicology report, standing alone, presents sufficient independent, objective evidence of an insured's intoxication to support a plan administrator's application of an intoxication exclusion under the heightened arbitrary and capricious standard of review)). Additionally, where a policy contains an exclusion based on the legal presumption of intoxication under the law of the state where the accident took place, it is reasonable for the insurance company to look to statutes that proscribe a limit which is considered *prima facie* evidence that a person is under the influence of alcohol.

Further supporting the administrator's decision is the fact that this is not a case in which the police report suggested a cause other than alcohol. *Cf. Hastie*, 115 F.3d at 896 (noting that the accident occurred after the insured's motorcycle collided with a vehicle that had switched into his lane and that the vehicle's driver pled guilty to failure to yield the right-of-way); *Jenkins v. Montgomery Ind. Inc.*, 77 F.3d 740 (4th Cir.1996) (finding there was insufficient evidence of causation where the intoxicated insured was fatally shot by a third party in a fight). The absence of other causal factors contributing to Mr. Veal's death supports Defendant's finding that Mr. Veal's intoxication was a contributing cause of his fatal injury. Defendant has therefore met its burden of showing that the intoxication exclusion applies.

Plaintiff contends that the administrator's decision was "wrong" because she failed to broaden the scope of the investigation into Mr. Veal's health record. If the administrator had investigated Mr. Veal's past health problems, Plaintiff contends that the administrator would have discovered that Mr. Veal suffered from syncope or a renal arterial defect. Plaintiff's argument is unpersuasive. During the more than two weeks that Mr. Veal was hospitalized, Plaintiff failed to alert the hospital staff that Mr. Veal suffered from either syncope or renal arterial defect. Had Plaintiff considered either problem to be a potential cause of her husband's fall, logic dictates that she would have mentioned the problems to the hospital staff as they gathered Mr. Veal's medical history. Instead, Plaintiff repeatedly stated that her husband had a drinking problem. Because of Plaintiff's failure to alert the medical staff of either of these problems, I find that the administrator made a reasonable decision. *Glazer*, 514 F.3d 1246 ("the function of the court is to determine whether there was a reasonable basis for the decision, based upon the facts as known to the administrator at the time the decision was made."). Additionally, even if syncope or renal arterial defect were discovered by the administrator, it is likely that each of these ailments would have triggered the "sickness, disease, mental incapacity or bodily infirmity" exception to the policy, thereby precluding Plaintiff's recovery.

## IV. CONCLUSION

The Plan administrator was not wrong in determining that Mr. Veal's accident was not covered under the Policy and that the health and intoxication exclusions applied to exclude coverage. Even if the Plan administrator was *de novo* wrong, its conclusions were "reasonable" under a heightened arbitrary and capricious review.

**IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment (Doc. 20) is **GRANTED.**

2. The clerk is directed to enter judgment for Defendant and close the file.

**ORDERED** on March 31, 2010.

/S/ Richard Smoak
**RICHARD SMOAK**
**UNITED STATES DISTRICT JUDGE**